UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
FILED

JAN 2 3 2026

Nathan Ochsner, Clerk of Court

ALAN BLECHER,

Plaintiff,

-against-

ROBERT BEEHLER;

JACQUELINE BEEHLER;

GREG BEEHLER;

KEVIN GILBERT; and

MICHELLE BLECHER,

Defendants.

4:25-cv-06221

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXTEND TIME AND

CROSS-MOTION FOR ENTRY OF DEFAULT

# TABLE OF CONTENTS

I. STATEMENT OF THE ISSUES...........................................................................1

II. SUMMARY OF THE ARGUMENT....................................................................1

III. INTRODUCTION.............................................................................................2

IV. ARGUMENT....................................................................................................3

    A. Defendants' Motion is Legally Insufficient: Defendants Fail to Allege, Let Alone

    Prove, "Excusable Neglect" Under Rule 6(b)(1)(B)............................................3

        1.  The 25-Day Void...................................................................................4

        2.  No Affidavit of Excuse.........................................................................4

        3.  Counsel's Frivolous Service Argument.................................................5

    B. The Default Was "Willful": A Strategic Decision to Ignore the Court Bars Equitable

    Relief.................................................................................................................6

        1.  The "Wait-and-See" Gambit.................................................................6

        2.  Prior Notice and the "Kenny" Strategy................................................7

        3.  Willfulness Confirmed by Evasion (Unclean Hands).............................8

        4.  Ad Hominem Attacks Are Not a Defense..............................................8

    C. Actual Prejudice: The Delay Facilitated "Fraud and Collusion" and Threats to

    Plaintiff's Family...............................................................................................9

        1.  The Threat to the Son (The Data Leak)................................................9

2.  The Threat to Plaintiff...................................................................................10

D. Defendants Fail to Proffer a Meritorious Defense..............................................12

E. The Complaint Speaks for Itself: It Pleads with Particularity "Voluminous" Detail as
Required for RICO and Fraud.......................................................................13

F. Counsel's Failure to Confer.......................................................................13

V. PRAYER...............................................................................................14

## TABLE OF AUTHORITIES

### CASES

*In re Dierschke,*
975 F.2d 181 (5th Cir. 1992)..........................................................................6

*Lacy v. Sitel Corp.,*
227 F.3d 290 (5th Cir. 2000)...................................................................1, 7, 8, 9

*Midwest Employers Cas. Co. v. Williams,*
161 F.3d 877 (5th Cir. 1998).........................................................................4

*Moldwood Corp. v. Stutts,*
410 F.2d 351 (5th Cir. 1969)........................................................................12

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*

507 U.S. 380 (1993)..................................................................................................4

*Pryor v. U.S. Postal Serv.,*

769 F.2d 281 (5th Cir. 1985).....................................................................................5

*Water Splash, Inc. v. Menon,*

581 U.S. 271 (2017)..................................................................................................6

**STATUTES**

18 U.S.C. § 1343 (Wire Fraud)................................................................................13

18 U.S.C. § 1344 (Bank Fraud)...............................................................................13

**RULES**

Fed. R. Civ. P. 6(b)(1)(B)..................................................................................1, 2, 3

Fed. R. Civ. P. 9(b)..................................................................................................13

Fed. R. Civ. P. 12(a)(1)(A)(i)....................................................................................2

# I. STATEMENT OF THE ISSUES

1. Whether Defendants, who admit receiving service but deliberately waited until after the responsive deadline to retain counsel, can establish "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(B).

2. Whether Defendants' default was "willful" under the standard set forth in *Lacy v. Sitel Corp.*, 227 F.3d 290 (5th Cir. 2000), given their strategic decision to ignore the litigation until the Plaintiff filed a Request for Default.

3. Whether the Plaintiff suffers actual prejudice where the Defendants utilized the delay period to facilitate threats of physical violence against the Plaintiff and his family by their co-conspirators.

# II. SUMMARY OF THE ARGUMENT

The Defendants' Motion to Extend Time must be denied because it fails to allege, let alone prove, "excusable neglect" as required by Rule 6(b)(1)(B). The Defendants offer no explanation for the 25-day delay between service and their retention of counsel. This silence confirms that the default was a willful, strategic decision to ignore the Court's jurisdiction—a choice that bars equitable relief under Fifth Circuit precedent. Furthermore, granting relief would severely prejudice the Plaintiff, as the Defendants utilized the delay not to prepare a defense, but to coordinate with their "Enforcer" to issue threats of violence against the Plaintiff and his son. Finally, the Defendants have failed to proffer a meritorious defense, relying instead on ad hominem attacks that are legally insufficient to set aside a default.

1

## III. INTRODUCTION

Defendants Robert Beehler and Jacqueline Beehler (the "Defaulting Defendants") are currently in default. Having made a strategic decision to ignore the Summons and Complaint served upon them on December 28, 2025, they now seek to evade the consequences of that decision through a legally insufficient motion that relies on ad hominem attacks rather than excusable neglect.

The Defendants' Motion to Extend Time (Doc. 13) is fatally flawed for a simple, dispositive reason: **The deadline had already passed.** Under Federal Rule of Civil Procedure 12(a)(1)(A)(i), the Defendants were required to answer by January 20, 2026. They did not. Because their motion was filed *after* the time had expired, this Court may not grant an extension based on simple "good cause." Instead, the Defendants must satisfy the strict standard of **Fed. R. Civ. P. 6(b)(1)(B)**, which mandates a specific finding, on motion, that the party "failed to act because of **excusable neglect**."

The Defendants' Motion fails to even articulate, let alone prove, excusable neglect. It provides no affidavit explaining why Defendants—sophisticated, high-net-worth individuals who lived and worked in the United States for years, possess intimate familiarity with the legal system, and have previously utilized civil and criminal process against others—waited until *after* the Plaintiff filed a Request for Entry of Default to make an appearance. These are not confused foreign tourists; they are experienced operators who have known of the risk of a lawsuit for years. Their silence is not neglect; it was a choice.

Bereft of facts to justify this strategic delay, Defendants' counsel resorts to inflammatory adjectives and professional discourtesy, characterizing a detailed RICO complaint regarding the

theft of over $4 million, threats of physical violence directed at both him and his son, and identity fraud as a "bitter post-divorce tantrum" and "verbose." This rhetoric is a transparent attempt to prejudice the Court against a *pro se* litigant. It fails, however, to mask the reality of the Defendants' conduct.

This default was not a procedural mishap; it was a tactical maneuver. Furthermore, the delay was not harmless. As detailed in the attached Affidavit, during the very window of silence the Defendants now seek to excuse, the RICO Enterprise they finance utilized the delay to launch extra-judicial attacks, including threats of physical violence against the Plaintiff and his son.

Because the Defendants have failed to meet the burden of Rule 6(b)(1)(B), and because their Willful Default has caused actual prejudice to the Plaintiff, their Motion must be denied and Default Judgment entered.

## IV. ARGUMENT

### A. Defendants' Motion is Legally Insufficient: Defendants Fail to Allege, Let Alone Prove, "Excusable Neglect" Under Rule 6(b)(1)(B)

The Defendants' Motion requests an extension based on vague assertions of age and residency, citing generally to Federal Rule of Civil Procedure 6(b). This broad citation obscures the critical procedural reality: the time to answer expired on January 20, 2026. Because the Defendants filed their motion *after* the expiration of the specified time, they are subject to the strict requirements of Rule 6(b)(1)(B), which permits an extension only if "the party failed to act because of **excusable neglect.**"

The burden of proving excusable neglect rests entirely on the movant. The Supreme Court has clarified that this standard is demanding; "inadvertence, ignorance of rules, or mistakes construing the rules do not usually constitute excusable neglect." *Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). "Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985). The Defendants' Motion is fatally defective because it offers **zero explanation** for the default.

**1. The 25-Day Void:** The Motion explains that counsel was retained on January 22, 2026. It is completely silent regarding the Defendants' conduct during the twenty-five days between Service of Process (December 28, 2025) and the retention of counsel.

**2. No Affidavit of Excuse:** The Defendants have not submitted an affidavit explaining *why* they failed to act during the statutory period. Did they misplace the summons? Did they misunderstand the date? The Court does not know, because they have not said.

The Court should not excuse what it does not know, especially when the Defendants used their time in default to threaten Plaintiff and his son with physical violence. By failing to account for the delay prior to the deadline, the Defendants have failed to carry their burden.

Furthermore, the Defendants attempt to use their status as "elderly Canadian citizens" to imply a lack of sophistication. This is contradicted by the record. True 'confusion' does not result in the retention of specialized white-collar defense counsel within hours of a docket entry; that is the hallmark of a sophisticated operator executing a contingency plan. These supposedly helpless foreign nationals successfully identified, vetted, and retained Freeman Law—a premier,

specialized white-collar defense firm. This rapid mobilization of high-level legal resources proves they were not 'confused'; they were calculating. They monitored the docket, waited for the Plaintiff to request the entry of default, and then executed a pre-planned legal defense strategy the moment their gamble on silence failed. The speed with which they acted *after* the risk of default materialized proves they were capable of acting *before* the deadline expired. Their failure to do so was strategy.

The Defendants' Motion relies on the false premise that they are unsophisticated Canadians unfamiliar with American law. This is demonstrably false. These are sophisticated, high-net-worth individuals with a long history of residence and high-level professional employment within the United States. They held long-term U.S. visas (or even permanent resident status) and built successful careers in this country. They possess intimate familiarity with the U.S. legal system, having previously considered or utilized civil process against the Plaintiff and civil and criminal process against others in business and personal contexts.

Yet, the Motion provides no affidavit explaining why these sophisticated litigants—who for a considerable amount of time prior to filing knew of the risk of this lawsuit—waited until *after* the Plaintiff filed a Request for Entry of Default to make an appearance. The Court should not find "excusable neglect" where the Defendants are fully versed in the legal system but chose to treat the Federal Rules as optional.

### 3. Counsel's Frivolous Service Argument

Counsel attempts to manufacture "confusion" by suggesting it "was not clear whether any service... was compliant with the Hague Convention." This is legally frivolous. Canada is a

signatory to the Hague Convention and has not objected to service under Article 10(b) or (c). *See Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017). The Defendants were personally handed the Summons by a licensed process server. This is the gold standard of notice.

Moreover, this argument proves Actual Notice. By debating the technicality of the service, Defendants admit they received the documents on December 28. If they genuinely believed service was defective, the proper procedural move was to file a timely Motion to Dismiss under Rule 12(b)(5), not to ignore the Court for 25 days. Using a feigned technical confusion to justify a month of silence is evidence of strategic delay, not excusable neglect. Neither the Defendants' nor counsel's purported confusion should excuse their delay.

## B. The Default Was "Willful": A Strategic Decision to Ignore the Court Bars Equitable Relief

In the Fifth Circuit, a finding of willful default ends the inquiry. "We conclude that when the court finds an intentional failure of responsive pleadings there need be no other finding." *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). " "Willful failure alone may constitute sufficient cause for the court to deny this motion." *Id.*

### 1. The "Wait-and-See" Gambit

The timeline proves Willfulness. Defendants were personally served on Dec 28. They did nothing. The deadline expired on Jan 20. They did nothing. On Jan 21, Plaintiff filed a Request for Default. On Jan 22, Defendants *immediately* hired counsel. This reaction speed proves they were monitoring the docket but made a strategic calculation to ignore it, likely relying on the "Canadian Shield." By this, Plaintiff refers to the Defendants' apparent calculation that their

status as foreign residents created a jurisdictional buffer that would render the lawsuit toothless. They wagered that the friction of international service and the complexities of enforcing a U.S. judgment in Canada would allow them to ignore the Summons with impunity. They bet on the inefficacy of the U.S. judicial process against foreign nationals. They only acted when the risk calculus changed, when Plaintiff requested the entry of default.

### 2. Prior Notice and the "Kenny" Strategy

Defendants cannot claim they were "surprised" or "overwhelmed" by the substance of the Complaint. They have been on notice of these claims for a significant period. Plaintiff previously transmitted courtesy copies of draft complaints—containing substantial overlap with the filed pleading—to John Kenny, the attorney with whom the Defendants have communicated extensively, over a period of many years.

Mr. Kenny initially indicated on multiple occasions, and in several different email chains, unprompted, and graciously, that he would accept service, only to subsequently refuse, forcing the Plaintiff to utilize international process servers.

This context is significant: the Defendants saw the claims coming, coordinated a strategy to evade service, and then, once served, chose to ignore the summons. This default is simply the culmination of a long-term strategy of evasion. "A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Dierschke*, 975 F.2d at 184).

7

A defendant who "chose to play games with this court" by waiting until the last possible second—or, in this case, *after* the last second—has intentionally failed to respond. *Dierschke*, 975 F.2d at 183.

### 3. Willfulness Confirmed by Evasion (Unclean Hands)

Any veneer of the Defendants' good faith is further eroded by their conduct regarding Co-Defendant Michelle Blecher. Previous counsel for the Enterprise indicated Michelle Blecher resided with the Defendants. Yet, when process servers attempted service, the Defendants denied her presence. This happened on multiple occasions.

A party that actively deceives process servers to shield a co-defendant from this Court's jurisdiction cannot simultaneously claim to be "confused" about the legal process. The Defendants understand the system well enough to manipulate it. Their failure to answer was consistent with a pattern of evasion, rendering the default willful.

### 4. Ad Hominem Attacks Are Not a Defense

Unable to justify their willfulness with facts, Defendants' counsel resorts to characterizing the Complaint as a "tantrum" and "verbose." This rhetoric serves only to distract from the central issue: his clients made a willful choice to ignore a federal summons. No amount of professional discourtesy towards a *pro se* litigant can cure a willful default under *Lacy*.

8

**C. Actual Prejudice: The Delay Facilitated "Fraud and Collusion" and Threats to Plaintiff's Family**

The Fifth Circuit recognizes prejudice where the delay results in "greater opportunities for fraud and **collusion**." *Lacy*, 227 F.3d at 293 (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir.1990)).

The Defendants ask the Court to view the period of January 20–22 as a harmless lapse. It was not. As detailed in the attached **Affidavit of Alan Blecher (Exhibit A)**, the Enterprise utilized this specific window to launch a tortious, extra-judicial counter-offensive:

1. **The Threat to the Son (The Data Leak):** On January 21, 2026, an associate of Co-Defendant Kevin Gilbert contacted the Plaintiff's son, Jonathan Blecher. The methodology of this contact demonstrates calculated malice and a consciousness of guilt. The associate initially dialed from a visible number, but apparently realizing his error in revealing his identity, he immediately disconnected before the call could be answered. He then instantly called back using a masking (*67) "Unknown" number to leave a voicemail. This tactical switching—hiding the number only after an unintentional reveal—was intended to evade liability while ensuring the intimidation (through untraceable means of unilateral contact) was delivered. The associate left a voicemail stating: *"Hi, I am calling for Kevin Gilbert. I currently am at a trade show with you."* Neither Mr. Gilbert nor his associate previously possessed Jonathan Blecher's private cell phone number. The Defendants' delay allowed the Enterprise time to "leak" this private contact and location data to the "Enforcer" to facilitate stalking. This associate did not want a social call. Given the context of the Enterprise's history of violence, and the

extreme safety and avoidance protocols the Plaintiff's family is forced to maintain to protect their lives, the acquisition and use of this private number can only be interpreted as a threat. The Defendants' delay allowed the Enterprise time to "leak" this private contact and location data to the "Enforcer," utilizing the window of silence to demonstrate a specific capability: the ability to pierce the Plaintiff's security perimeter, specifically intended to induce terror. Horrified by this intrusion and the implication of physical surveillance, the Plaintiff's son called the number back to determine the extent of the threat. The crucial question was if they knew the location of the trade show, or just knew about Plaintiff's presence at a show generally, without knowing the true location. On this call, the associate confirmed that they were referring to the specific trade show in Las Vegas where the Plaintiff was located. To the recipients, the threat was clear as day.

2. **The Threat to Plaintiff:** Co-Defendant Gilbert subsequently contacted the Plaintiff directly. During this call, the prejudice caused by the Defendants' delay became undeniably clear:

- **Proof of Collusion:** Gilbert stated **to the effect that** he had reviewed the Complaint and knew the specific dollar amounts alleged, as well as the specific subject matter of the claims—information he could only have obtained through coordination with the Defendants.

- **Admission of Agency:** Gilbert further (explicitly and voluntarily) clarified **to the effect that**, as in the past, he was calling and acting on behalf of Co-Defendant Michelle Blecher. He confirmed his previous call (as alleged in the Complaint) was intended to be a threat. This strongly suggests that the Enterprise exists and functions exactly as alleged in the Complaint.

10

- **Surveillance and Intimidation:** Gilbert explicitly stated to the effect that the purpose of his contact was to ensure the Plaintiff knew that Gilbert "knew where [the Plaintiff] was." This was a clear message of surveillance and lingering threat of violence.
- **Threats of Violence:** Gilbert issued multiple threats, including a statement regarding an "associate in Mexico" who wished to meet the Plaintiff for the purpose of violent confrontation. Furthermore, Gilbert offered to provide his own address—not for the purpose of accepting service, but specifically to facilitate a physical confrontation.

Granting an extension now would prejudice the Plaintiff by retroactively validating a strategy of "Delay via Intimidation." The timing of these threats—delivered immediately prior to Counsel's request for a stipulation—suggests a coordinated effort to terrify the Plaintiff into submission. It appears the Defendants calculated that by terrorizing the Plaintiff extra-judicially, they could force him to forfeit his claims or compel him to grant an immediate extension out of fear.

If the Court excuses this default, it effectively signals that sophisticated defendants may ignore federal deadlines, utilize the resulting window of silence to execute an intimidation campaign to secure a litigation advantage, and then simply hire counsel to reset the clock once the intimidation fails. The Defendants should not be permitted to use the Federal Rules as a shield while using their co-conspirators as a sword.

This creates a perverse incentive. It allows the Defendants to retain the benefit of their delay (the successful delivery of threats and the acquisition of the Plaintiff's private data and the private data of his son) while escaping the cost of that delay (the default). The Federal Rules were not

11

intended to provide a safe harbor for racketeering enterprises to conduct enforcement operations while holding the Court in abeyance. The prejudice to the Plaintiff is absolute: he is being asked to litigate on the merits against parties who are actively demonstrating that they view the legal process as a secondary theater to their primary strategy of coercion through threat of physical violence.

## D. Defendants Fail to Proffer a Meritorious Defense

To set aside a default, a defendant must provide more than a general denial, or as is the case here, the Defendants must provide more than insults directed at the Complaint and the Plaintiff. As the Fifth Circuit held in *Moldwood*:

> "[T]here should appear in the motion a clear and specific statement showing, not by conclusion, but by definite recitation of facts, that an injustice has been probably done by the judgment... All of the authorities require at least this much."
>
> *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969) (citations omitted).

Defendants' Motion contains **zero** facts regarding the merits. It relies entirely on the bald assertion that the Complaint is a "tantrum." By failing to offer a "definite recitation of facts" disputing the theft or the wire fraud, the Defendants have failed to meet the "universally recognized" essential standard for relief. Notably, they have not submitted an affidavit denying the specific acts of wire fraud, the "structuring" of deposits, or the financing of the harassment campaign. Without a sworn statement denying the core allegations, it is clear that they have failed to carry their burden.

12

## E. The Complaint Speaks for Itself: It Pleads with Particularity "Voluminous" Detail as Required for RICO and Fraud

Counsel relies entirely on inflammatory rhetoric, characterizing a detailed RICO complaint regarding the theft of over $4 million and identity fraud as a "bitter post-divorce tantrum" and complaining that the pleading is "verbose."

This is a civil RICO action alleging Bank Fraud (18 U.S.C. § 1344), Wire Fraud (18 U.S.C. § 1343), and Money Laundering. Federal Rule of Civil Procedure 9(b) *requires* fraud to be pled with particularity. The Complaint complies with that standard. For example, the Complaint details exact dates of wire transfers, exact quotes from extortionate emails, and the specific mechanics of the "Ciocca" deposit theft.

Counsel also uses the term "pro se" disparagingly. Plaintiff is a licensed attorney, having passed the New York, California, and Ontario Bar Exams. Both parties to this motion are officers of the court. Plaintiff requests that this litigation be conducted with the civility required by the Local Rules. Adjectives like "bitter" are distractions used to conceal the fact that the Defendants have no answer to the evidence presented in the Complaint.

## F. Counsel's Failure to Confer

Finally, Defendants' counsel failed to confer in good faith. Counsel emailed Plaintiff at **2:56 PM** (Texas Time) on Thursday, January 22, 2026. Plaintiff was working at a trade show and unable to respond immediately. Defendants filed their Motion that same night. This "check-the-box" approach to conferral further demonstrates the lack of good faith.

13

## V. PRAYER

For these reasons, Plaintiff requests that the Court **DENY** the Motion to Extend Time and

**ENTER DEFAULT** against Defendants Robert Beehler and Jacqueline Beehler.

Alternatively, if the Court is inclined to consider the extension, Plaintiff requests leave to

conduct **expedited discovery** (depositions of Defendants limited to the issue of Willfulness and

the location of Co-Defendant Michelle Blecher) before the Court rules.

Respectfully submitted,

/s/ Alan P. Blecher

**ALAN P. BLECHER**

Plaintiff, Pro Se

411 Walnut St, 19810

Green Cove Springs

FL, 32043

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 22, 2026, at approximately 2:56 PM (CST), counsel for

Defendants contacted me via email regarding the relief requested in their Motion. Due to work

obligations at a trade show, I was unable to respond immediately. Defendants filed their Motion

that same evening without awaiting a response or conducting a meaningful conference.

Accordingly, I am opposed to the relief requested in Defendants' Motion, and we have been

unable to reach an agreement.

14

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ALAN BLECHER,

Plaintiff,

v.

ROBERT BEEHLER; JACQUELINE BEEHLER;

GREG BEEHLER; KEVIN GILBERT; and

MICHELLE BLECHER,

Defendants.

Civil Action No. 4:25-cv-06221

AFFIDAVIT OF PLAINTIFF ALAN BLECHER IN SUPPORT OF OPPOSITION TO

DEFENDANTS' MOTION TO EXTEND TIME

I, **ALAN BLECHER**, appearing *pro se*, state as follows:

1. I am the Plaintiff in this action. I am an attorney licensed in New York, having passed the New York, California, and Ontario Bar Exams. I have personal knowledge of the facts stated herein.

## I. EVIDENCE OF WILLFULNESS: PRIOR NOTICE AND EVASION

2. **Prior Notice of Claims:** Defendants cannot claim surprise regarding the substance of this litigation. Prior to filing, I engaged in extensive attempts to negotiate in good faith with Mr. John Kenny, who served as counsel of record for Co-Defendant Michelle Blecher. Based on the forensic analysis of communications detailed in my Complaint, Mr. Kenny effectively functioned as the conduit for the entire Enterprise, as all Defendants communicated and strategized through him.

3. **Receipt of Drafts:** During this period, I transmitted courtesy copies of draft complaints to Mr. Kenny. These drafts contained substantially similar allegations to many allegations contained in the Complaint, especially with regard to threats of physical violence, intrusion upon seclusion, defamation, etc. The Defendants have been aware of the factual and legal basis of these claims for a long time. Regarding the coercion in the negotiation process of the MSA, those were facts I had made reference to countless times, both during and after negotiation, and many subsequent negotiations, and I had shared the idea of litigation on that basis as well.

4. **The Strategic Refusal of Service:** During our email exchanges, Mr. Kenny initially indicated a willingness to facilitate and accept service. However, he subsequently and **abruptly reversed course**, once I had hired a process server. Kenny refused to accept

service on behalf of the Defendants. This abrupt refusal appeared to be a calculated,
strategic maneuver designed to force the Plaintiff to navigate complex international
service protocols, thereby buying the Enterprise additional time to reorganize and evade
the Court's jurisdiction.

5.  **The "Kenny" Representation:** Mr. Kenny previously represented **in writing, via email
    to my process server**, that Co-Defendant Michelle Blecher resided with her parents,
    Defendants Robert and Jacqueline Beehler, at their home in Courtenay, British Columbia.

6.  **The Evasion (Unclean Hands):** Despite this written representation from their own
    counsel (or agent), when process servers attempted to execute service upon Michelle
    Blecher at the Beehler residence, Defendants Robert and/or Jacqueline Beehler denied
    she was present and claimed ignorance of her whereabouts.

7.  **Conclusion on Willfulness:** This contradiction establishes a pattern of bad faith. The
    Defendants utilized their counsel to feign cooperation while personally obstructing
    service on a co-defendant. Their failure to answer the Summons in this case was a
    continuation of this established strategy of evasion.

## II. EVIDENCE OF PREJUDICE: THE JANUARY 21 "COUNTER-OFFENSIVE"

8.  The Defendants ask the Court to excuse their delay. This delay was not harmless. The
    Enterprise utilized this specific window of silence during which they were in default to
    launch an extra-judicial counter-offensive targeting me and my family.

9.  **The Threat to My Son (The Data Leak):** On January 21, 2026—one day after the
    Defendants' deadline to answer expired—an associate of Co-Defendant Kevin Gilbert
    (identifying himself as "Dave") contacted my son, Jonathan Blecher.

a. **Malicious Tradecraft:** "Dave" initially dialed from a visible number. He immediately disconnected before the call could be answered—apparently realizing his error in revealing his identity—and instantly called back using a masked (*67) "Unknown" number.

b. **The Message:** He left a voicemail stating: *"Hi, I am calling for Kevin Gilbert. I currently am at a trade show with you."*

c. **The Confirmation:** My son called the number back to assess the threat. He was concerned if they knew the true location of the trade show, or simply knew of a trade show generally. The associate confirmed to the effect that they were referring to the specific trade show in Las Vegas where I was located.

d. **The Breach:** Neither Kevin Gilbert nor his associate previously possessed Jonathan's private cell phone number. The acquisition of this private data and the tracking of our physical location constitutes a severe security breach that could only have been facilitated by the Defendants leaking information to their "Enforcer."

10. **The Threat to Plaintiff (Kevin Gilbert):** On January 21, 2026, at approximately 5:07 PM, I received a direct call from Co-Defendant Kevin Gilbert from the telephone number 4166253415.

a. **Admission of Notice:** Mr. Gilbert stated to the effect that he had reviewed the Complaint and cited specific dollar amounts alleged therein. This proves the Defendants shared the litigation documents with him while ignoring the Court.

b. **Admission of Agency:** Mr. Gilbert clarified to the effect that he was acting on behalf of Co-Defendant Michelle Blecher.

c. **Surveillance:** Mr. Gilbert stated to the effect that he wanted me to know that he "knew where I was."

d. **Physical Threats:** Mr. Gilbert referenced an "associate in Mexico" who wished to meet me for the purpose of violent confrontation. Given his documented history of threatening to "draw and quarter" me, I reasonably interpreted this as a threat of physical violence or death. He further offered to provide his own address for the specific purpose of a physical confrontation.

e. **The Necessity of Avoidance:** The contact initiated by the Enterprise during this delay was a breach of a security perimeter I have maintained for years to protect my life. I maintain strict secrecy regarding my physical location, private contact information, and travel itinerary specifically because of the violent history of Co-Defendant Kevin Gilbert.

f. **The "Draw and Quarter" Threat:** Mr. Gilbert has previously issued graphic, lethal threats against me, specifically stating that he would **"draw and quarter"** me. This was a specific threat of dismemberment and torture that necessitated my procurement of a Texas Concealed Carry License and the implementation of extreme avoidance protocols. There were, of course, countless additional threats I received over the years.

g. **The Threat to Defendant Robert Beehler:** Mr. Gilbert's capacity for violence is known to all Defendants. He previously threatened to murder Defendant Robert Beehler (his own father-in-law), stating he would **"send a bunch of n------- to cut Bob's throat."** The Defendants know exactly who Kevin Gilbert is. They strategically leverage his reputation for violence. By unleashing him to contact me

and my son during the window of their default, they knowingly exposed us to a man they know is capable of threatening patricide and dismemberment.

## III. BAD FAITH CONFERRAL

11. Defendants' counsel emailed me regarding the Motion to Extend at **2:56 PM (Texas Time)** on Thursday, January 22, 2026. I was working at a trade show and unable to respond immediately. Counsel filed the Motion that same night. This lack of meaningful conferral further demonstrates the Defendants' disregard for the rules.

## IV. CONCLUSION

12. The Defendants' default was a strategic choice. They utilized the delay not to seek counsel, but to coordinate an intimidation campaign against me and my son. Granting an extension would prejudice me by validating their use of "Delay via Intimidation."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 23, 2026.

/s/ Alan P. Blecher

**ALAN P. BLECHER**

Plaintiff, Pro Se

411 Walnut St, 19810

Green Cove Springs

FL, 32043

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS


ALAN BLECHER,


Plaintiff,



-against-




ROBERT BEEHLER;

JACQUELINE BEEHLER;

GREG BEEHLER;

KEVIN GILBERT; and

MICHELLE BLECHER,



Defendants.

4:25-cv-06221


**[PROPOSED] ORDER DENYING MOTION TO EXTEND TIME AND ENTERING DEFAULT**

Before the Court is Defendants Robert Beehler and Jacqueline Beehler's Motion to Extend Time (Doc. 13) and Plaintiff's Opposition and Cross-Motion for Entry of Default.

The Court finds that the Defendants failed to file their motion prior to the expiration of the deadline and have failed to demonstrate "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(B). The Court further finds that the Defendants' failure to answer was willful and that the Plaintiff has demonstrated prejudice.

**IT IS THEREFORE ORDERED** that:

1. Defendants' Motion to Extend Time to Answer (Doc. 13) is **DENIED**.

2. The Clerk is directed to **ENTER DEFAULT** against Defendants Robert Beehler and Jacqueline Beehler immediately.

SIGNED this _____ day of _____, 2026.

_____

**KENNETH M. HOYT**

UNITED STATES DISTRICT JUDGE